[No. F009915. Fifth Dist. Feb. 24, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTONIO CORNELIO, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Roger E. Venturi and Gelacio Bayani, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BROWN (G. A.), J.\*** —Antonio Cornelio appeals from a judgment entered on a jury verdict finding him guilty of possession of cocaine for sale (Health & Saf. Code, § 11351—count I), and possession of cocaine (Health & Saf. Code, § 11350—count II). The court denied defendant's motion to exclude a prior felony conviction of false imprisonment (Pen. Code, § 236) for impeachment purposes. When defendant testified, the prior felony was used to impeach him.

### FACTS

Gilbert Texiera discovered an automobile, a 1973 Lincoln Continental, parked on his dairy farm about 10:30 a.m. on June 5, 1987. He contacted the sheriff's department that afternoon. Early that evening, Deputy Gehring responded to the scene and met with Texiera, who wanted the vehicle removed from his property. Deputy Gehring ran a registration check on the license plates and determined the vehicle belonged to defendant. He then checked in the opened glove compartment and found the registration card. The information on the registration card corresponded with the information he obtained from the registration check.

Also in the glove box were cellophane baggies and a large plastic grocery bag containing a white powdery substance. White powdery substance was also found on the driver's seat, on the console between the front bucket seats, and on the floorboards. The substance on the floor was in a larger, chunky form. About 500 grams of the substance was seized all together, and was determined to be cocaine.

The following morning the sheriff's department was notified defendant was in the area. He was seen talking with an employee of the dairy farm. Two deputy sheriffs responded. The deputies found defendant. He told them he was looking for his automobile.

Defendant was detained and later arrested that afternoon. After the arrest, officers discovered defendant was in possession of a cellophane baggie containing cocaine. Two more baggies containing cocaine were found under the area of the door jamb of the patrol car in which defendant was transported to county jail.

According to defendant, he resided in Redwood City. He went to Turlock on June 4, hoping to find work. That evening he was in a bar when he

---

\* Retired Presiding Justice of the Court of Appeal, sitting under assignment by the Chairperson of the Judicial Council.

saw an acquaintance from Mexico, Juan Bustos. He and Bustos drank together until the bar closed. At that time, they went to defendant's hotel room where they spent the night. Bustos gave defendant a small amount of cocaine for personal use, which was in defendant's possession when he was arrested.

Continuing, the defendant testified that early the next morning, June 5, Bustos borrowed defendant's automobile for a short time. Instead of being gone only a short while, Bustos did not return until the evening. He no longer had defendant's car and said he had abandoned it next to a dairy in Mountain View. Bustos did not return the keys, and left again without returning. Defendant was looking for his automobile when the deputies found him. He denied knowledge of having anything to do with the cocaine found in his car.

## DISCUSSION

### ADMISSION OF PRIOR FELONY CONVICTION OF FALSE IMPRISONMENT FOR IMPEACHMENT

 Defendant argues the court erred in admitting for impeachment purposes evidence of his prior felony conviction of false imprisonment (Pen. Code, § 236) because that offense does not necessarily include moral turpitude. The issue is one of first impression. We will conclude that the offense of felony false imprisonment does involve moral turpitude under the prescription of *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111].

 This court summarized the *Castro* rule in *People* v. *Mansfield* (1988) 200 Cal.App.3d 82, 87 [245 Cal.Rptr. 800], as follows: "Pursuant to *People* v. *Castro, supra,* 38 Cal.3d 301, and subject to the trial court's discretion under Evidence Code section 352, only prior felony convictions that necessarily involve moral turpitude may be used to impeach a witness in a criminal proceeding. (*Id.* at p. 306.) 'Moral turpitude' means a general ' "readiness to do evil" ' (*id.* at p. 314), i.e., 'an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.' (*In re Craig* (1938) 12 Cal.2d 93, 97 [82 P.2d 442]; 2 Bouvier's Law Dict. (3d rev. 1914) p. 2247; 1 Witkin, Cal. Procedure (3d ed. 1985) Attorneys, § 375, pp. 424-426; see also Annot. (1975) 23 A.L.R. Fed. 480, 488 involving exclusion or deportation of aliens under Federal Immigration and Naturalization Act.) *Castro* makes no attempt to list or define those felonies which involve moral turpitude, but it makes clear that moral turpitude does not depend on dishonesty being an

element of the felony. '[I]t is undeniable that a witness' moral depravity of *any kind* has some "tendency in reason" (Evid. Code, § 210) to shake one's confidence in his honesty.' (*People* v. *Castro, supra,* 38 Cal.3d at p. 315; italics added.)

"Finally, *Castro* holds that in deciding whether a felony offered for impeachment necessarily involves moral turpitude, the trial court may look only to the 'least adjudicated elements' of the crime for which the witness was previously convicted. (*Id.* at p. 317.) This concept simply means that in determining whether a previous felony involves moral turpitude the court cannot go behind the conviction and take evidence on or consider the facts and circumstances of the particular offense. Instead, the court must look to the statutory definition of the particular crime and only if the least adjudicated elements of the crime necessarily involve moral turpitude is the prior conviction admissible for impeachment purposes. (*People* v. *Statler* (1985) 174 Cal.App.3d 46, 53 [219 Cal.Rptr. 713].)"

Penal Code section 236 defines false imprisonment as follows: "False imprisonment is the unlawful violation of the personal liberty of another."

Penal Code section 237 provides: "False imprisonment is punishable by fine not exceeding one thousand dollars ($1,000), or by imprisonment in the county jail not more than one year, or by both. If such false imprisonment be effected by violence, menace, fraud, or deceit, it shall be punishable by imprisonment in the state prison."

As explained by the Supreme Court in *People* v. *Henderson* (1977) 19 Cal.3d 86, 93 [137 Cal.Rptr. 1, 560 P.2d 1180]: "As defined in section 236, 'False imprisonment is the unlawful violation of the personal liberty of another.' Without more, the conduct described in section 236 is a misdemeanor offense. (§ 237.) If effectuated by 'violence, menace, fraud or deceit,' false imprisonment is elevated to a felony. (§ 237.)" (Fn. omitted.)

Thus, Penal Code section 237 provides additional elements of the crime when a felony is to be proven (see *People* v. *Haney* (1977) 75 Cal.App.3d 308, 313 [142 Cal.Rptr. 186]). In this case it is conceded that the prior conviction was a felony.

A narrower issue is whether a prior felony requiring one or more of the elements of violence, menace, fraud or deceit necessarily indicates a state of mind that falls within the *Castro* definition of moral turpitude. We think the addition of one of these elements to the simple violation of personal liberty of another makes the crime one involving moral turpitude.

Defendant concedes fraud and deceit denote dishonesty within *Castro*'s requirement of moral turpitude. (See *People* v. *Castro, supra,* 38 Cal.3d at p. 315; *People* v. *Zataray* (1985) 173 Cal.App.3d 390, 399 [219 Cal.Rptr. 33].) If the least adjudicated element of the conviction was a willingness to use violence or menace to commit the crime of false imprisonment, moral turpitude is also present because that willingness indicates a general "readiness to do evil."

CALJIC No. 9.60 pertaining to false imprisonment provides in relevant part: "False imprisonment is the unlawful violation of the personal liberty of another. False imprisonment means there must be an intentional and unlawful restraint, confinement or detention which compels a person to stay or go somewhere against his will.

"Violence means the exercise of physical force used to restrain over and above the force reasonably necessary to effect such restraint.

"Menace means a threat of harm express or implied by word or act."

 Violence and threat of harm (menace) including a violation of a person's right to be free from the threat of personal harm or restraint of liberty, has been held sufficient to cause a crime to involve moral turpitude within the meaning of *Castro*. (*People* v. *Elwell* (1988) 206 Cal.App.3d 171 [253 Cal.Rptr. 480]—assault by means of force likely to produce great bodily harm is a crime involving moral turpitude; *People* v. *Armendariz* (1985) 174 Cal.App.3d 674, 682 [220 Cal.Rptr. 229]—assault with a deadly weapon is a crime involving moral turpitude; *People* v. *Zataray, supra,* 173 Cal.App.3d at pp. 399-400—simple kidnapping is a crime involving moral turpitude.)

Thus, the least adjudicated elements of felony false imprisonment based on violence or the threat of harm ("menace means a threat of harm express or implied by word or act") necessarily includes moral turpitude because either of these elements indicate a general "readiness to do evil." Further, such a finding is in accordance with common sense and generally accepted community standards. As in *People* v. *Cavazos* (1985) 172 Cal.App.3d 589, 595 [218 Cal.Rptr. 269], the average person would believe that anyone who uses violence or a threat of harm as a means of confinement or detention which compels a person to stay or to go somewhere against his will is guilty of some degree of moral laxity.

*People* v. *Mansfield, supra,* 200 Cal.App.3d 82, is distinguishable. In that case this court held that felony battery (simple battery which results in serious bodily injury) does not constitute a crime involving moral turpitude.

We noted a conviction of felony battery did not require proof of force likely to cause bodily injury; that the state of mind and amount of force used is the same for simple battery as it is for felony battery; the "least touching" would suffice. Thus, the least adjudicated elements of the offense did not involve moral turpitude. The force used does not determine whether the offense is a felony battery; whether or not the offense is a felony battery is determined by the actual injury inflicted. As a result, felony battery is not a crime involving moral turpitude. On the other hand, in the case at bench the distinction between simple false imprisonment and felony false imprisonment focuses on the difference in mental state required in the commission of the two offenses.

II.*

. . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Best, Acting P. J., and Ardaiz, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 3, 1989.

---

* See footnote, *ante,* page 1580.