[No. A054623. First Dist., Div. Three. Mar. 26, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN JOHN BABICH, Defendant and Appellant.

COUNSEL

William D. Farber, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Acting Assistant Attorney General, Ronald E. Niver and Gloria Folger DeHart, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WERDEGAR, J.—Steven John Babich was charged in the first count of an information with assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)),[1] in the second count with felony false imprisonment by violence (§§ 236, 237), and in the third count with battery on a person in a dating relationship with defendant (§ 243, subd. (e)). The jury convicted defendant of the crimes charged in the second and third counts, but on the first count convicted him only of the lesser included offense, simple assault (§ 240). On appeal, defendant contends his trial attorney rendered ineffective assistance in that he failed to request instructions on misdemeanor false imprisonment as a lesser included offense of the charged felony. We conclude the court should have given such instructions sua sponte, as the evidence would have supported a finding that the false imprisonment was committed without "violence, menace, fraud, or deceit." (§ 237.) The error requires reversal of the false imprisonment conviction.

FACTS

The victim, Rachel Mitchell, had dated defendant on and off for several years, living with him for part of that time. On August 26, 1990, Mitchell returned from a trip to Los Angeles taken in the company of a male mutual friend. She went to see defendant at his family home, where he was staying. They talked alone in defendant's bedroom. Defendant asked Mitchell if she had slept with the friend with whom she had travelled; Mitchell denied she had. At this point, their accounts diverge.

According to Mitchell, she told defendant she did not want to see him anymore. He pulled a steak knife from his bedding, put the knife at her throat and, when she screamed, covered her mouth. Defendant told her he was going to kill her, that if he could not have her, nobody would. When he

---

[1] All further statutory references are to the Penal Code.

uncovered her mouth, she pleaded with him not to kill her. Defendant's mother and aunt then came into the room. Defendant quickly hid the knife, but held Mitchell with both his arms. Defendant's mother yelled at him to let Mitchell go, but he did not immediately do so. The aunt suggested calling the police, and Mitchell nodded her agreement. Defendant "yanked" her neck back. Eventually defendant let her go, and they all left the room.

Defendant testified that Mitchell, after first denying she had slept with their friend, finally admitted having done so. He called her "a lying little slut and a whore." She slapped him, and he grabbed her arm. She tried to slap or poke him with her other hand and to knee him in the groin. To defend himself, he grabbed her other arm, spun her around and held her against him. He "clamped" both her arms with one of his and put his other hand over her mouth. When she tried to bite his hand, he removed it, told her to shut up, and put his hand on her arms. At that point, his mother and aunt entered, and his mother said to let Mitchell go. At first he continued to hold her, afraid she would slap or try to knee him again; eventually he let her go, and they left the bedroom. According to defendant, he had held Mitchell's arms down, but had not squeezed her or tried to hurt her.

Defendant's aunt was awakened and heard the voices of defendant and Mitchell. She heard Mitchell say, "Please don't hurt me." Defendant said, "Shut up." Mitchell screamed, but her voice then became muffled. The aunt woke up defendant's mother and went with her to defendant's room. When they entered, the aunt saw defendant holding Mitchell from behind, his arms crossed tightly around her body and arms. She was "pinned" to him. She was "wiggling" and saying, "I want to go." Defendant's mother repeatedly told him to let her go and tried to pry his hands off. The aunt said they should call "911." Eventually defendant released Mitchell.

The aunt did not see defendant with a knife, and no knife was found in a later police search of defendant's room.

When defendant's mother entered the bedroom, she saw defendant holding Mitchell with both arms wrapped around her body. She urged him to let Mitchell go; he did not do so immediately, but only after she had asked twice.

Defendant, Mitchell, the mother and aunt were joined in the kitchen by defendant's father. Mitchell accused defendant of holding a knife to her throat. Defendant denied it, saying it was only his fingernail. Defendant's father said defendant would have to move out. As defendant lost his temper, shoving some chairs and pushing over a table, Mitchell fled to a neighbor's

home, where she said defendant wanted to kill her and asked that the police be called. The responding police officer noticed a red line on the side of Mitchell's throat.

No instruction was requested or given on misdemeanor false imprisonment. Defendant made a motion for new trial on the grounds, inter alia, that the instruction should have been given sua sponte and counsel was ineffective for failing to request it. In a declaration submitted with the motion, counsel stated his omission was inadvertent, not intentional.

## DISCUSSION

False imprisonment is defined in section 236 as "the unlawful violation of the personal liberty of another." Section 237 provides the offense is punishable as a felony if, and only if, it is effected by "violence, menace, fraud, or deceit."

■ The misdemeanor offense requires no force beyond that necessary to restrain the victim. All that is necessary is that " 'the individual be restrained of his liberty without any sufficient complaint or authority therefor, and it may be accomplished by words or acts . . . which such individual fears to disregard.' [Citations.]" (*People v. Haney* (1977) 75 Cal.App.3d 308, 313 [142 Cal.Rptr. 186].) " 'Any exercise of force, or express or implied threat of force, by which in fact the other person is deprived of his liberty or is compelled to remain where he does not wish to remain, or to go where he does not wish to go, is false imprisonment.' " (*People v. Zilbauer* (1955) 44 Cal.2d 43, 51 [279 P.2d 534].)

■ As to the felony's elements, the jury was instructed, through CALJIC No. 9.60 (5th ed. 1988 bound vol.), that *"Violence, within the terms of this instructions [sic] means the exercise of physical force used to restrain over and above the force reasonably necessary to effect such restraint. [¶] Menace means a threat of harm express or implied by word or by act."* (Italics added.) The instruction's distinction between violence and force is consistent with dictum in *People v. Arvanites* (1971) 17 Cal.App.3d 1052, 1059-1060 and footnote 7 [95 Cal.Rptr. 493], where the court noted that a contrary statutory interpretation, rendering "violence" synonymous with "force," would allow the felony offense to largely swallow up the misdemeanor. We

agree and conclude the instruction accurately states the meaning of "violence" in section 237. (See also *People* v. *Cornelio* (1989) 207 Cal.App.3d 1580, 1585 [255 Cal.Rptr. 775].)[2]

■ All elements of misdemeanor false imprisonment are also elements of the felony; the felony cannot be committed without necessarily committing the misdemeanor. The misdemeanor is therefore a lesser included offense of the felony. (*People* v. *Greer* (1947) 30 Cal.2d 589, 596 [184 P.2d 512].) ■ A trial court is required to instruct sua sponte on a lesser included offense " ' "when the evidence raises a question as to whether all of the elements of the charged offense are present and there is evidence that would justify a conviction of such a lesser offense . . . ." [Citations.]' [Citation.]" (*People* v. *Turner* (1990) 50 Cal.3d 668, 690 [268 Cal.Rptr. 706, 789 P.2d 887]), that is, when the evidence would justify a jury in acquitting on the greater offense, but convicting on the lesser. ■ The issue here is thus whether the evidence would have justified a jury finding that defendant unlawfully restrained Mitchell, but did so without violence or menace.[3]

The evidence to support a conviction of the misdemeanor was ample. Mitchell, defendant, defendant's mother and his aunt all testified defendant held Mitchell for some period of time with his arms. According to the aunt, Mitchell was "pinned," struggling against the restraint and saying she wanted to leave. Defendant's mother, similarly, saw defendant holding Mitchell with both his arms; he refused to let her go although his mother urged him to do so. Defendant himself testified he was holding Mitchell to prevent her from moving freely because he feared further attack from her.

The jury could reasonably have found this testimony, especially that of the mother and aunt, credible, while disbelieving Mitchell's claim defendant had

---

[2]This conclusion is consistent with applicable dictionary definitions, which suggest violence always includes force, but force may or may not include violence. Thus, Black's Law Dictionary defines violence as "Unjust or unwarranted exercise of force, usually with the accompaniment of vehemence, outrage or fury. . . ." (6th ed. 1990, p. 1570, col. 1.) Webster's Third New International Dictionary defines violence in part as "exertion of any physical force so as to injure or abuse . . . intense, turbulent, or furious action, force, or feeling often destructive . . . ." ((1970) p. 2554, col. 2.) Force, by contrast, is defined as "Power, violence, compulsion, or constraint exerted upon or against a person or thing . . ." (Black's Law Dict., p. 644, col. 2) or ". . . to constrain or compel by physical, moral, or intellectual means . . ." (Webster's Third New Internat. Dict., p. 887, col. 2).

[3]Although defendant, on appeal, has framed the issue only as one of ineffective assistance, the Attorney General expressly concedes misdemeanor false imprisonment is a lesser included offense of the crime charged and the court was bound to instruct on it, sua sponte, if the evidence justified such an instruction. The Attorney General states, "In our view the issue here is not whether counsel was ineffective, but whether an instruction on misdemeanor false imprisonment was required on the facts in this case." Both parties have thus had a full opportunity to brief the sua sponte instruction issue, which also was argued below on defendant's motion for new trial.

held a knife to her throat and threatened her life. Indeed, the jury's acquittal on the charge of assault with a deadly weapon indicates they were unconvinced a knife had been used. At the same time, the jury could, and apparently did, reasonably reject defendant's claim of self-defense, a defense that would have rendered his forcible restraint of Mitchell lawful. A reasonable conclusion from the evidence in this case would have been that the prosecution had proven unlawful restraint through physical force, but not the use of violence—i.e., excessive force—or menace to accomplish the restraint.

The Attorney General argues defendant's own testimony supported the felony conviction, assuming the jury rejected defendant's claim of self-defense. But even having rejected the self-defense claim, the jury had to decide whether the elements of felony false imprisonment were met. Self-defense aside, the evidence here raised a question whether Mitchell's restraint was accomplished by violence or menace. *People* v. *Boyd* (1990) 222 Cal.App.3d 541 [271 Cal.Rptr. 738], on which the Attorney General relies for this argument, is completely inapposite. In that case, the evidence indisputably showed a robbery-murder had been committed, and the defenses presented were alibi and misidentification; the court held no instruction on second degree murder was required. (*Id.* at pp. 564-565.) There, there was simply no evidence to support conviction of the lesser offense; here, as already stated, there was such evidence.

While counsel, in argument, conceded defendant had restrained Mitchell, he vigorously disputed the evidence defendant threatened Mitchell's life with a knife, arguing the knife was an invention designed by Mitchell to divert attention from her sexual infidelity to defendant. Counsel also argued Mitchell had invented her testimony that defendant choked her or jerked her neck while holding her; counsel urged the jury to believe instead the testimony of defendant that he simply held her "straight-jacketed." The prosecutor, in contrast, urged the jury to reject self-defense as a defense to false imprisonment, arguing it was implausible defendant felt he needed to defend himself from the smaller Mitchell by holding a knife to her throat. Thus, the question whether defendant used violence and menace was raised by both the evidence and the arguments.

Second, the Attorney General argues that defendant's use of *any* force to restrain Mitchell would require conviction of felony rather than misdemeanor false imprisonment. We disagree. As already discussed, CALJIC No. 9.60 correctly states the distinction between restraint by force and by violence; violence in this context implies the use of force beyond that

required for simple restraint. Neither of the cases cited by the Attorney General on this point (*People* v. *Zilbauer, supra,* 44 Cal.2d at p. 51; *People* v. *Agnew* (1940) 16 Cal.2d 655, 660 [107 P.2d 601]) supports the contrary position.

The failure to instruct on a lesser included offense supported by the evidence may be deemed harmless error if " 'the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions. . . .' [Citations.]" (*People* v. *Turner, supra,* 50 Cal.3d at pp. 690-691; *People* v. *Ramkeesoon* (1985) 39 Cal.3d 346, 351-352 [216 Cal.Rptr. 455, 702 P.2d 613.) No such implied finding can be located here. Convictions of simple assault and battery do not necessarily imply findings of violence or menace. Indeed, the acquittal on aggravated assault suggests the jury had doubts as to the degree of force used and might have convicted only of misdemeanor false imprisonment had it not been presented with the " 'unwarranted all-or-nothing choice' " (*People* v. *Ramkeesoon, supra,* at p. 352) between conviction of the felony and complete acquittal on the charge.

Having concluded the court's failure to instruct on the lesser included offense requires reversal of the false imprisonment conviction, we need not decide whether defense counsel's failure to request such an instruction constituted ineffective assistance.

### DISPOSITION

The conviction of false imprisonment charged in the second count is reversed. In all other respects the judgment is affirmed.

White, P. J., and Chin, J., concurred.

On April 20, 1993, the opinion was modified to read as printed above.