[No. A073612. First Dist., Div. Three. Oct. 29, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANK GREG BAMBA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II C. and part II D.

**COUNSEL**

Peter F. Goldscheider, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, and Christina V. Kuo, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**PARRILLI, J.**—In the published portion of this case, we hold that Penal Code section 236 is neither unconstitutionally vague nor overbroad.

A jury convicted appellant Frank Greg Bamba of one count of assault with a deadly weapon (a van) (Pen. Code, § 245, subd. (a)(1)),[1] one count of felony false imprisonment (§§ 236/237), and one count of possessing methamphetamine (Health & Saf. Code, § 11377, subd. (a)). The jury further found appellant had personally used a deadly weapon in committing the assault.

In a bifurcated trial, the court found appellant had suffered two prior robbery convictions which constituted strikes under the "Three Strikes" law. (§ 1170.12, subd. (c)(2).) At sentencing, the court reduced the assault with a deadly weapon and methamphetamine possession charges to misdemeanors. Nevertheless, the court sentenced appellant to 25 years to life under the Three Strikes law based on the current felony false imprisonment conviction and appellant's 2 prior robbery convictions (§ 1170.12, subd. (c)(2). This timely appeal followed.

Appellant raises numerous arguments on appeal. His chief contentions are: (1) The false imprisonment statute (§ 236) is unconstitutionally vague and overbroad; (2) the evidence does not support his conviction for *felony* false imprisonment (which requires evidence he effected the false imprisonment by "violence, menace, fraud or deceit" (§ 237)); (3) the court committed instructional error; and (4) we must remand for resentencing under *People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628] (*Romero*). We remand to permit the trial court to exercise its authority to strike one or more of the prior convictions pursuant to *Romero*, but otherwise affirm the judgment.

I

FACTS

On Friday, May 26, 1995, appellant and the victim, Elizabeth Albertini, ended their five-month romantic relationship. Although they fought during the breakup, Albertini spent the night with appellant at his father's Belmont apartment. Appellant stayed up all night smoking methamphetamine.

The next morning, Saturday, May 27, appellant was angry and paranoid. He hallucinated his parole officer was outside the apartment. Appellant would not let Albertini leave the apartment.

---

[1]Subsequent statutory references are to the Penal Code, unless otherwise noted.

About noon, however, appellant and Albertini left in his van. The van contained all of Albertini's possessions. They stopped at a convenience store where appellant returned some rental videos and Albertini bought cigarettes.

When Albertini returned to the van, appellant began backing it directly toward her. Albertini grabbed onto the spare tire attached to the back of the van because she "didn't want to get run over." She yelled at appellant to stop and he yelled back at her. Appellant did not stop; instead, he drove out of the parking lot and headed down Ralston Road toward Highway 101. Albertini, who was on the back of the van, continued to yell at appellant to stop, but he continued driving. Appellant shouted at Albertini: "I am going to kill you, Liz."

Appellant entered southbound Highway 101 at Ralston Avenue. Albertini estimated he reached speeds of 55 to 80 miles per hour on the freeway. After appellant got onto the freeway, Albertini managed to climb onto the roof of the van to a skylight which she had opened earlier when she was inside the vehicle. She tore off the skylight cover because she thought she could enter the van through that opening, but a metal bar blocked it. Albertini grabbed onto the metal bar to keep from falling off the roof. As appellant drove down the freeway, Albertini lay facedown on the top of the van, with her arms stretched above her head and her feet dangling off the back of the van.

At some point appellant slowed down. He yelled at Albertini through the skylight to get off the van. Albertini said she would if he stopped the van. Appellant exited the freeway and drove into a parking lot off Woodside Road in Redwood City. In the parking lot, appellant repeatedly swerved under some low trees which scratched Albertini. Appellant then briefly stopped in the parking lot and threw most of Albertini's belongings (including her identification) out of the van.

According to Albertini, she tried to get off the van while appellant was unloading it in the parking lot. However, appellant left the engine running and every time Albertini attempted to get off the roof, appellant jumped back in and moved the van. After he unloaded Albertini's belongings, appellant raced out of the parking lot and reentered Highway 101, this time going the opposite direction (northbound).

Eventually, appellant stopped on the shoulder of Highway 101 near Holly Street. Albertini did not get off the van, however, because she was afraid if she tried appellant would take off and slam on the brakes. She again asked appellant to turn off the van.

Shortly thereafter, a Highway Patrol vehicle pulled behind the van as it was parked by the side of Highway 101. Albertini got off the van when she

saw the officers. According to the responding officers, Albertini was shaking, her face was streaked with tears, she was disheveled, and she had numerous scratches and bruises. The police arrested appellant. During his booking search, the police discovered a plastic bag containing methamphetamine and a small glass pipe hidden on appellant's person.

Before trial, appellant contacted Albertini and tried to dissuade her from testifying. Albertini was, in fact, reluctant to testify at trial and the district attorney had her arrested the day before trial to ensure she would appear in court.

*Defense*

Appellant testified in his own behalf. He claimed he thought he left Albertini in the convenience store parking lot when he first drove off. He did not know she was on his vehicle until he pulled over on the freeway near Woodside Road. He claimed Albertini got off of the van when he stopped in the parking lot in Redwood City. He did not realize she had climbed back onto the van until he returned to the freeway. He then pulled over to the side of the freeway and the Highway Patrol arrived about an hour later.

Appellant said he had been trying to leave Albertini for several weeks unsuccessfully. He denied trying to dislodge Albertini from the top of his vehicle. He claimed he drove the vehicle safely until he could find an area where Albertini could get down safely.

Based on this evidence, the jury convicted appellant of felony false imprisonment, assault with a deadly weapon, and possession of methamphetamine.

## II

### DISCUSSION

#### A. *The False Imprisonment Statute (§ 236) Is Not Unconstitutionally Vague or Overbroad.*

Section 236 provides: "False imprisonment is the unlawful violation of the personal liberty of another." Appellant contends this statute—which has been the law in this state since 1872—is unconstitutionally vague and overbroad because: (1) it does not define the term "personal liberty"; and (2) even if we interpret "personal liberty" to mean physical liberty, it does not adequately define what would be an "unlawful" violation of another's physical liberty.

1) *Vagueness.*

 We first address appellant's contention that section 236 is void for vagueness.

 Due process requires that criminal statutes be reasonably definite. (*Kolender* v. *Lawson* (1983) 461 U.S. 352, 357 [103 S.Ct. 1855, 1858, 75 L.Ed.2d 903]; see also *Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 269 [198 Cal.Rptr. 145, 673 P.2d 732].) In order for a criminal statute to satisfy the dictates of due process in this regard, it must meet two requirements. "First, the provision must be definite enough to provide a standard of conduct for those whose activities are proscribed. [Citations.] Because we assume that individuals are free to choose between lawful and unlawful conduct, 'we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he [or she] may act accordingly. Vague laws trap the innocent by not providing fair warning.' [Citations.] [¶] Second, the statute must provide definite guidelines for the police in order to prevent arbitrary and discriminatory enforcement. [Citations.]" (*People* v. *Heitzman* (1994) 9 Cal.4th 189, 199 [37 Cal.Rptr.2d 236, 886 P.2d 1229].)

 In analyzing whether a statute is sufficiently definite to pass constitutional muster, we look not only at the language of the statute but also to legislative history and California decisions construing the statute. (*Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238, 246 [158 Cal.Rptr. 330, 599 P.2d 636].) This is because the courts require citizens to apprise themselves not only of statutory language, but also of legislative history and subsequent judicial construction. (*People* v. *Heitzman, supra,* 9 Cal.4th at p. 200; see also *People* v. *Falck* (1997) 52 Cal.App.4th 287, 293-295 [60 Cal.Rptr.2d 624].) In addition, our Supreme Court has recently cautioned that ". . . abstract legal commands must be applied in a specific *context.* A contextual application of otherwise unqualified legal language may supply the clue to a law's meaning, giving facially standardless language a constitutionally sufficient concreteness. Indeed, in evaluating challenges based on claims of vagueness, the [United States Supreme Court] has said '[t]he particular context is all important.' " (*People* ex rel. *Gallo* v. *Acuna* (1997) 14 Cal.4th 1090, 1116 [60 Cal.Rptr.2d 277, 929 P.2d 596] (italics in original), quoting *Communications Assn.* v. *Douds* (1950) 339 U.S. 382, 412 [70 S.Ct. 674, 691, 94 L.Ed. 925].)

 Appellant first contends section 236 is unconstitutionally vague because it does not define the term "personal liberty." Appellant argues "personal liberty" "certainly has a broad meaning as understood by the

average citizen. The Declaration of Independence assures all people certain inalienable rights, among which are the right to life, liberty and the pursuit of happiness. What types of liberties may be transgressed without committing a criminal offense?" The answer to this question lies in the statute itself, which states "*False imprisonment* is the unlawful violation of the personal liberty of another." Thus, "personal liberty" must be read in the context of the statute in which it appears, which outlaws false *imprisonment*. Thus, the context of the language at issue clearly suggests it relates to the personal liberty to be free from physical restraint, not to some other more abstract liberty interest. In short, contextual application of the otherwise unqualified legal language supplies the clue to the law's meaning, giving the facially standardless phrase "personal liberty" a constitutionally sufficient concreteness. (*People* ex rel. *Gallo* v. *Acuna, supra,* 14 Cal.4th 1090, 1116.)

But even if the meaning of "personal liberty" were vague on the face of the statute, we would nevertheless conclude judicial construction has supplied that phrase with a definite and clear meaning. The cases have consistently defined the crime of false imprisonment as requiring restraint of a person's *freedom of movement.* ■ Thus, as our Supreme Court stated 57 years ago: "In defining false imprisonment, it is said in 22 American Jurisprudence, at page 359, (2) 'In order to constitute a case of false imprisonment, it is essential that *there be some restraint of the person*; but it is not necessary that there be confinement in a jail or prison. Any exercise of force, or express or implied threat of force, by which in fact the other person is deprived of his liberty or is compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment.' " (*People* v. *Agnew* (1940) 16 Cal.2d 655, 659-660 [107 P.2d 601]; see also *People* v. *Von Villas* (1992) 10 Cal.App.4th 201, 256 [13 Cal.Rptr.2d 62] [rejecting notion that "personal liberty" denotes broad freedoms inherent in our society and finding that it refers to the freedom of movement only]; *People* v. *Ross* (1988) 205 Cal.App.3d 1548, 1553-1554[253 Cal.Rptr. 178] ["The crime of false imprisonment requires some intended confinement or restraint of the person . . . ."]; *People* v. *Haney* (1977) 75 Cal.App.3d 308, 313 [142 Cal.Rptr. 186] ["The crime of false imprisonment . . . requires for its commission some intended confinement or restraint of the person."]; *Ware* v. *Dunn* (1947) 80 Cal.App.2d 936, 943-944 [183 P.2d 128] ["The essential thing in false imprisonment is the restraint of the person."].)

■ Thus, we may "flesh out" the necessary clarity by referring to the judicial interpretations of the statutory language. (*Sechrist* v. *Municipal Court* (1976) 64 Cal.App.3d 737, 745 [134 Cal.Rptr. 733]; *People* v. *Falck, supra,* 52 Cal.App.4th at pp. 294-295.)

Appellant next contends that even if we limit section 236 to prohibit only the violation of another's freedom of movement, the statute still does not

define when such a restraint on another's freedom of movement will be "unlawful." Appellant gives the example of a parent who punishes a child by confining the child to his room. Appellant asks rhetorically whether that conduct would constitute a crime.

However, "[i]n order to succeed on a facial vagueness challenge to a legislative measure that does not threaten constitutionally protected conduct . . . a party must do more than identify some instances in which the application of the statute may be uncertain or ambiguous; he must demonstrate that 'the law is impermissibly vague *in all of its applications.*'" (*Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1201 [246 Cal.Rptr. 629, 753 P.2d 585], italics in original, quoted in *People* v. *Kelly* (1992) 1 Cal.4th 495, 534 [3 Cal.Rptr.2d 677, 822 P.2d 385].) Appellant cannot do that here.

Moreover, a statute is sufficiently certain if it employs words of "long usage." (*People* v. *Kelly, supra,* 1 Cal.4th at p. 534.) Indeed, the long history of the statute—which has been the law in this state for 125 years— "virtually precludes us from finding it impermissibly vague at this late date." (*People* v. *Kelly, supra,* 1 Cal.4th at pp. 533-534 [rejecting vagueness challenge to statute which codified the *M'Naghten* test (*M'Naghten's Case* (1843) 10 Clark & Fin. 200 [8 Eng.Rep. 718]) for insanity].)

2) *Overbreadth.*

Appellant next contends section 236 is unconstitutionally overbroad "in the sense that it could prohibit speech protected by the First Amendment." We disagree.

"Although constitutional rights are generally said to be personal, a well-established exception is found in the overbreadth doctrine associated with First Amendment jurisprudence. [Citation.] Under this doctrine, litigants may challenge a statute not because their own rights of free expression are violated, but because the very existence of an overbroad statute may cause others not before the court to refrain from constitutionally protected expression. [Citations.] [¶] To succeed in a constitutional challenge based on asserted overbreadth, the [defendant] must demonstrate the statute inhibits a substantial amount of protected speech. [Citations.] '[O]verbreadth . . . must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.' (*Broadrick* v. *Oklahoma* [(1973)] 413 U.S. [601,] 615 [93 S.Ct. at p. 2918, 37 L.Ed.2d at p. 842].)" (*In re M.S.* (1995) 10 Cal.4th 698, 709-710 [42 Cal.Rptr.2d 355, 896 P.2d 1365].)

Appellant has utterly failed to carry his burden to prove section 236 is overbroad. Indeed, he has not cited a single incident in which section

236—which prohibits a person from restraining another's freedom of movement—would impermissibly limit a person's freedom of speech. Thus, he has not shown that section 236 "inhibits a substantial amount of protected speech." His overbreadth argument is completely meritless.

B. *Substantial Evidence Supports the Felony False Imprisonment Conviction.*

Appellant next contends the evidence is insufficient to support his conviction for felony false imprisonment because there is no evidence he effected the false imprisonment by "violence" or "menace." (§ 237.) We disagree.

Again, the essential element of false imprisonment is restraint of the person. Any exercise of express or implied force which compels another person to remain where he does not wish to remain, or to go where he does not wish to go, is false imprisonment. (*People v. Fernandez* (1994) 26 Cal.App.4th 710, 717 [31 Cal.Rptr.2d 677].) False imprisonment is a felony if it is effected by violence or menace. (§ 237.)

Here, there is no question the evidence is sufficient to show appellant forced Albertini to remain where she did not wish to remain, or to go where she did not wish to go. The evidence established appellant knew Albertini was on the roof of the van but refused to stop to let her off, despite her pleas to do so. The remaining question is whether there is substantial evidence of violence or menace. We conclude there is.

We must uphold a conviction against a substantial evidence attack if a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. In making this determination, we view the evidence in the light most favorable to the People and presume in support of the judgment every fact the trier could reasonably deduce from the evidence. (*People v. Iniguez* (1994) 7 Cal.4th 847, 854 [30 Cal.Rptr.2d 258, 872 P.2d 1183]; *People v. Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

In the context of section 237, "violence" means " 'the exercise of physical force used to restrain over and above the force reasonably necessary to effect such restraint.' " (*People v. Babich* (1993) 14 Cal.App.4th 801, 806 [18 Cal.Rptr.2d 60], quoting CALJIC No. 9.60, italics omitted.) In this context, "menace" means " 'a threat of harm express or implied by word or by act.' " (*People v. Babich, supra,* 14 Cal.App.4th 801, 806, quoting CALJIC No. 9.60.)

Here, there was substantial evidence of both violence and menace. With respect to violence, the "physical force" appellant used to effect the false imprisonment—the driving of the vehicle—was greater than the force necessary to effect the restraint. Albertini stayed on the van primarily because she was afraid to get off while it was moving. It is likely appellant could have caused Albertini to remain on the vehicle if he had obeyed the speed limit and driven safely. However, there was evidence appellant drove as fast as 80 miles per hour on the freeway and purposefully swerved his vehicle, thus increasing the danger to Albertini. Thus, the "force" appellant used to keep appellant on top of the van was greater than that reasonably necessary to effect her restraint, and increased the danger to her.

There is also substantial evidence of menace—that is, a threat of harm express or implied. Here, appellant expressly told Albertini he intended to kill her. In addition, Albertini claimed she first got on the van in order to prevent appellant from running her over. Thus, the clear implication of this verbal threat and assault was that, if Albertini did try to get down, appellant might again try to hit her with the van. Consequently, a reasonable trier of fact could conclude this was part of the reason Albertini was afraid to get off the van even when it came to a standstill. It follows there is substantial evidence appellant effected the false imprisonment at least in part through an implied or express threat of harm.

Substantial evidence supports the felony false imprisonment conviction.

C., D.*

. . . . . . . . . . . . . . . . . . . . . . . . .

## III

### DISPOSITION

The judgment is vacated and this matter is remanded to the trial court for the limited purpose of allowing the trial court to exercise its discretion pursuant to *Romero*. "If, on remand, the trial court . . . decides to exercise its discretion to strike [one or both of] the prior felony conviction allegations in furtherance of justice . . . , the court must set forth the reasons for that decision in strict compliance with section 1385(a). Any such decision will be reviewable for abuse of discretion according to the procedures generally

*See footnote, *ante*, page 1113.

applicable to such decisions." (*Romero, supra,* 13 Cal.4th at p. 532.) In all other respects, the judgment is affirmed.

Corrigan, Acting P. J., and Walker, J. concurred.