Filed 3/16/15  P. v. Gerardo CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B252957 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA129242) |
| v. | |
| JERAMY GERARDO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John T. Doyle, Judge.  Reversed in part and remanded.

Davina T. Chen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven E. Mercer and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jeramy Gerardo was convicted of first degree burglary with a person present (Pen. Code,[1] §§ 459, 667.5, subd. (c)(21)); misdemeanor assault (§ 240); misdemeanor false imprisonment (§ 236); and vandalism in an amount under $400 (§ 594, subd. (a)). He challenges the burglary conviction on several grounds and also argues that there was insufficient evidence to support the false imprisonment conviction. We reverse the finding that a person other than an accomplice was present during the burglary, strike the finding that the burglary constituted a violent felony, and remand the matter to the trial court for the recalculation of Gerardo's presentence custody credits.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 1, 2013, Gerardo was seen in a car that had been reported stolen. Gerardo fled on foot when he saw the police and entered a nearby mobile home that was occupied by Richele Nichols. Nichols was in the bathroom when she heard a very loud, booming noise. She left the bathroom to investigate. As she walked toward the living room, she felt Gerardo "grab right here," indicating the top portion of her shoulder. Nichols described his arm reaching around her body, crossing her neck, then touching the opposite shoulder.

Nichols ran from the mobile home to the police who had gathered outside in pursuit of Gerardo. Gerardo remained inside for at least 45 minutes. During that time, banging sounds emanated from within the mobile home. Gerardo was apprehended after officers saw him emerge from beneath the mobile home and run away.

Gerardo was charged with first degree residential burglary with a person present; assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)); false imprisonment by violence (§ 236); vandalism causing damage less than $400; and unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a)).

At trial, there was conflicting testimony about how Gerardo touched Nichols. Nichols testified that his grasp "wasn't real strong." "He wasn't holding super tight or

---

[1]     Unless otherwise indicated, all further statutory references are to the Penal Code.

2

anything like that. He didn't have me in, like, a super grip or anything hurtful." Nichols "froze for a moment," frightened. "I didn't know what to do. And then I ended up just going running down the hall exiting the front slider." Nichols did not have to push to break free; she was not restrained. Gerardo's touch left no marks.

Deputy Sheriff David Berry, who had spoken with Nichols on the day of the incident, testified that Nichols told him that when she exited the bathroom, "she felt a—an arm grab her from behind. I believe he had—said right arm grab her from behind. She was held there I believe she said for a few minutes. I think she said it felt like longer. And as soon as she felt the grip loosen, she bolted for the door, frantically ran towards the door, ran outside, looked for the nearest deputy." After reviewing his report, Berry testified that Nichols had not in fact stated how long the interaction took, only that she said it felt like hours. When questioned about Berry's account of her statements, Nichols testified that she did not recall telling Berry that Gerardo was holding her, that she felt a grip, or that she had to break free in order to leave; but it was possible she had said those things. She confirmed that Gerardo had not removed his hand before she left but that he had not held her in a grip, nor was there any resistance when she walked forward.

The owner of the mobile home, Carrie Johnson, described the scene after the incident as being "like a tornado had ripped through my house." There was a hole through her bathroom floor where the linoleum and wood subflooring had been ripped up. Berry testified that the hole in the bathroom floor was big enough that he could probably fit through it. The closet doors in the spare bedroom were ripped off and things were on the floor. The door where Gerardo entered the mobile home was damaged. A kitchen pipe had been broken. Johnson estimated that it would cost $500 to $600 to replace the carpet in the house, and that repairing the hole in the bathroom would "probably cost around a couple hundred dollars." She did not know how much it would cost to repair or replace the closet doors but estimated that repairing the paneling in the bedroom would cost $80 to $90.

Gerardo testified at trial. He testified that he had not stolen the car, but that he had only removed a cellular phone from it. He ran when he saw the police. He claimed that

he knocked on the door of the mobile home with the plan to ask to use the telephone. Gerardo claimed that Nichols answered the door and let him in when he said, "Look, ma'am. Can I please come in [and] make a phone call or can I please use your phone to make a phone call? I don't have intentions to hurt you, touch you, take anything. I'm just scared for my life. The police are chasing after me.[] They have their weapons out." Gerardo said that Nichols directed him to the back room. He did not see her again.

Gerardo testified that he had waited for Nichols in the back room for ten minutes or so, and then looked for her in the mobile home. He saw that there were police outside. He sat on the floor assessing the situation and heard a helicopter and police announcements telling him to come out with his hands up. Then the police announced that a dog would be deployed, which alarmed Gerardo. Gerardo continued, "So that's when I seen—I seen some tools on the floor, and the plywood is real cheap right there. I actually used to live in a mobile home in Rancho Dominguez for a few years with my grandmother. And mobile homes are pretty cheap under the bottom held by support beams. And I decided I want to get out of here and I don't want to take a chance getting bit by the dog. I'm scared once they introduced the dog to the whole situation. I got scared. [¶] And that's when I basically—I've actually done construction work before; so I know exactly how to do it. There was like a tool box right there. I actually cut a small hole in the bathroom floor and I escaped underneath. And I just went underneath the house."

Gerardo was convicted of first degree burglary with a person present; misdemeanor assault; misdemeanor false imprisonment; and vandalism in an amount under $400. He admitted that he had suffered a prior felony conviction falling within the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and requested that the court exercise its discretion pursuant to section 1385 to dismiss this prior strike. The court declined to exercise its discretion to strike the prior strike conviction. The court sentenced Gerardo to eight years in state prison for the first degree burglary, representing the middle term of four years doubled under the "Three Strikes" law. Gerardo received a consecutive five-year sentence enhancement pursuant to section 667, subdivision (a)(1)

due to his prior conviction for first degree burglary, for a total prison term of 13 years. For the three misdemeanor counts, the court sentenced Gerardo to concurrent sentences of 235 days with credit for time already served. Based on the jury's finding that a person other than an accomplice was present at the time of the first degree burglary, the trial court designated the offense a violent felony pursuant to section 667.5, subdivision (c)(21) and limited Gerardo's presentence custody credits to 15 percent under section 2933.1, subdivision (a). Gerardo appeals.

## DISCUSSION

### I.    Alleged Variance in Theory of Burglary Between Preliminary Hearing and Trial

Gerardo argues that his burglary conviction was a conviction for "a different burglary" than was charged in the information and proven at the preliminary hearing.[2] His claim that he was convicted of a different burglary is premised on his assertion that the information "charged the burglary that was proved at the preliminary hearing: entry into the mobile home with intent to commit felony assault or felony false imprisonment." Ultimately, the prosecutor argued at trial that the burglary consisted of the entry into the bathroom of the mobile home with the intent to commit felony vandalism. Gerardo argues that these were different crimes and that therefore his conviction for burglary cannot stand.

It is well-established that "a defendant may not be prosecuted for an offense not shown by the evidence at a preliminary hearing or arising out of the transaction upon which the commitment was based." (*People v. Burnett* (1999) 71 Cal.App.4th 151, 165-166.) For instance, after possession of a .38 caliber revolver had been established by the evidence at a preliminary hearing, at trial the prosecutor could not prove the charge of possession of a firearm by a felon by means of evidence of a separate incident of

---

[2]    The preliminary hearing was held with respect to these charges in Case No. TA127639. Subsequently, that case was dismissed and refiled with the present case number. The parties waived a new preliminary hearing.

5

possession of a .357 magnum revolver. (*Id*. at pp. 164-171.) Similarly, when one unauthorized use of a motor vehicle was proven at the preliminary hearing, at trial the prosecution could not properly offer evidence of a separate unauthorized use of the vehicle as an alternative basis for conviction. (*People v. Dominguez* (2008) 166 Cal.App.4th 858, 866.)

Here, however, Gerardo was not punished for a separate incident from that proven at the preliminary hearing because all the facts concerning what Gerardo was alleged to have done in the incident were presented at the preliminary hearing. At that hearing, evidence was offered that Nichols was in the mobile home when she heard a loud bang. When she left the bathroom to see what had happened, Gerardo briefly grabbed her before she escaped. Gerardo was in the home after Nichols ran away. Gerardo admitted to the police that "he ended up tunneling his way underneath the mobile home." Evidence was presented of damage to the mobile home, and specifically in the bathroom: furniture had been upended, carpet torn up in the living room, the kitchen flooded by a broken water pipe, a "large hole [made] in the bathroom" floor, closet doors pulled off bedroom closets, and damage done to the paneling in one bedroom. Nichols told the police that the damage had not been there before the man entered the mobile home and that she had not given him permission to enter.

When combined with the information charging Gerardo with burglary, the transcript of the preliminary hearing "'afford[ed] defendant practical notice of the criminal acts against which he must defend.'" (*People v. Jones* (1990) 51 Cal.3d 294, 317.) Those acts included, inter alia, entering the bathroom and damaging the floor. Accordingly, Gerardo was "advised of the charges against him so that he ha[d] a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial," as due process requires. (*Ibid*.) Gerardo was prosecuted only for offenses "shown by the evidence at the preliminary hearing or transactionally related to the offense that formed the basis for the commitment order." (*Burnett*, *supra*, 71 Cal.App.4th at p. 171, fn. 9.) Due process was not violated here.

6

Gerardo asserts that the theory of burglary presented at trial was advanced but rejected at the preliminary hearing. He claims that "[a]lthough the People attempted at the preliminary examination to prove entry into the mobile home with the intent to commit felony vandalism, that charge was unproved." This assertion is not supported by the record. The court ruled that the evidence did not support a charge of felony vandalism under section 594(a) because there was insufficient evidence of the dollar amount of damage done inside the mobile home. It made no statements and no rulings concerning entry into the mobile home with the intent to commit felony vandalism.

Gerardo's assertion that the preliminary hearing gave him notice only that "the criminal act against which he must defend was the entry into the mobile home accompanied by the intent to commit felony assault or false imprisonment" is similarly unsupported by the record of the preliminary hearing. At no time was the burglary limited to that theory by any participant. The prosecutor did not articulate any specific theory of burglary at the preliminary hearing and there was no argument by any counsel as to the burglary count. The court ruled after the presentation of evidence that there was sufficient cause to believe that Gerardo had committed burglary, but it did not specify any particular theory of the crime. Gerardo has not established any error here.

## II. Sufficiency of the Evidence of Burglary

To be guilty of burglary, a person must enter a dwelling, or a room within the dwelling, with the intent to commit a theft or any felony. (§ 459.) Gerardo argues that his conviction for burglary cannot stand because there was insufficient evidence that he entered the mobile home, or a room within the mobile home, with the intent to commit theft or any felony. "In reviewing a claim for sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or special circumstance beyond a reasonable doubt. We review the entire record in the light most favorable to the judgment below to determine whether it discloses sufficient evidence—that is, evidence that is reasonable, credible, and of solid value—supporting

7

the decision, and not whether the evidence proves guilt beyond a reasonable doubt. [Citation.] We neither reweigh the evidence nor reevaluate the credibility of witnesses. [Citation.] We presume in support of the judgment the existence of every fact the jury reasonably could deduce from the evidence. [Citation.] If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Jennings* (2010) 50 Cal.4th 616, 638-639 (*Jennings*).)

The evidence here was sufficient for the jury to conclude that Gerardo entered the mobile home bathroom with the intent to commit felony vandalism. Gerardo testified that after Nichols left the mobile home he sat inside for a period of time trying to "assess the situation." Law enforcement announcements concerning a police dog and the sound of a police dog pawing at the door frightened Gerardo, and that was when he saw tools and decided to escape by tunneling through the bathroom floor. Gerardo then ripped a hole in both the linoleum and the underlying wood subflooring that was large enough for an adult male to fit through. The jury was shown a photograph of the damage to the bathroom. The owner of the mobile home estimated that to repair the bathroom floor would "probably cost around a couple hundred dollars," but she had not obtained any formal estimates for repair work.

The jury was not bound by Johnson's opinion of what repair costs might be for the damage to the bathroom floor. (See *People v. Pena* (1977) 68 Cal.App.3d 100, 103.) CALCRIM No. 1860, as given here, provides, "A witness gave her opinion of the value of the property she owned. In considering the opinion, you may but are not required to accept it as true or correct. Consider the reasons the witness gave for any opinion, the facts or information on which she relied in forming that opinion, and whether the information on which the witness relied was true and accurate. You may disregard all or part of any opinion that you find unbelievable or unreasonable. You may give the opinion whatever weight, if any, you believe it deserves." The jury could reasonably have concluded despite Johnson's estimate that a hole of that size and magnitude would have cost more than $400 to repair and that Gerardo intended to do damage of that extent

8

when he entered the bathroom. The evidence was sufficient to support Gerardo's conviction.

### III. Sufficiency of the Evidence that a Person Was Present During the Burglary

First degree burglary is a serious felony (§ 1192.7, subd. (c)(18)) and a strike under the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). A first degree burglary is defined as a violent felony only when "it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary." (§ 667.5, subd. (c)(21).) The jury convicted Gerardo of first degree burglary with a person present,[3] and based upon this finding, the court designated the burglary a violent felony and limited Gerardo's presentence custody credits to 15 percent pursuant to section 2933.1, subdivision (a).

Gerardo argues that the evidence was insufficient that any person was present in the residence during the commission of the burglary. We review the record in the light most favorable to the judgment to determine whether the jury could have found beyond a reasonable doubt that a person was present at the time of the burglary. (*Jennings*, *supra*, 50 Cal.4th at pp. 638-639.)

We find no evidence in the record from which the jury could have concluded that there was a person present in the mobile home when Gerardo committed burglary—that is, at the time he entered the bathroom with the intent to commit felony vandalism by ripping a hole in the floor. All the evidence at trial was that Nichols fled the house almost immediately upon Gerardo's entry, and that it was not until some time later that Gerardo tunneled through the bathroom floor to escape. It is undisputed that Gerardo was alone in the mobile home by the time the burglary occurred.

---

[3] Gerardo was convicted of first degree burglary because the jury concluded that the mobile home was inhabited and that it was a trailer coach as defined by the Vehicle Code. (§ 460.) A trailer coach is inhabited if someone uses it as a dwelling, whether or not someone is inside at the time of entry. (CALCRIM No. 1701.) Gerardo does not challenge the jury's verdict that the burglary was of the first degree.

The Attorney General argues that it is sufficient that Nichols was in the mobile home when Gerardo entered it, relying on *People v. Garcia* (2004) 121 Cal.App.4th 271 (*Garcia*), in which two defendants broke into a house late at night and stole items from within. The occupants within the house fled after hearing the sounds of the defendants prying open the back door. (*Id*. at p. 275.) This court concluded that because the insertion of a prying tool into the door jamb constituted the entry into the home, and because the occupants were inside the house at the time of that entry, the evidence was sufficient to establish that a person other than an accomplice was present during the burglary. (*Id*. at p. 281.)

In *Garcia*, *supra*, 121 Cal.App.4th 271, the entry into the home itself constituted the burglary because it was made with the intent to commit theft. But here, in contrast to *Garcia*, the burglary was not committed when Gerardo initially entered the home. As the prosecutor admitted, there was no evidence that Gerardo's initial entry into the mobile home was committed with the intent to commit theft or any felony. The prosecutor argued instead that after he had entered the mobile home, Gerardo entered the bathroom with the intent to commit felony vandalism. The record is unequivocal that at that point in time Gerardo was alone in the mobile home.

As there was no evidence in the record that any other person was present in the mobile home at the time Gerardo entered the mobile home bathroom with the intent to commit felony vandalism, the evidence is insufficient to support the finding that a person other than an accomplice was present in the residence during the burglary. Accordingly, we reverse the jury's finding under section 667.5, subdivision (c)(21). On remand, the trial court is directed to recalculate Gerardo's custody credits.

## IV. Sufficiency of the Evidence of False Imprisonment

Gerardo was acquitted of felony false imprisonment but convicted of misdemeanor false imprisonment. He argues that the evidence was insufficient to support this conviction because there was insufficient evidence that he restrained Nichols or forced her to stay or go anywhere against her will.

10

"As defined in section 236, 'False imprisonment is the unlawful violation of the personal liberty of another.' Without more, the conduct described in section 236 is a misdemeanor offense. (§ 237.) If effectuated by 'violence, menace, fraud or deceit,' false imprisonment is elevated to a felony. (§ 237.)" (*People v. Henderson* (1977) 19 Cal.3d 86, 93, overruled on another ground in *People v. Flood* (1998) 18 Cal.4th 470, 484-490.) "The misdemeanor offense requires no force beyond that necessary to restrain the victim. All that is necessary is that 'the individual be restrained of his liberty without any sufficient complaint or authority therefor, and it may be accomplished by words or acts . . . which such individual fears to disregard.' [Citation.] '"Any exercise of force, or express or implied threat of force, by which in fact the other person is deprived of his liberty or is compelled to remain where he does not wish to remain, or to go where he does not wish to go, is false imprisonment."' [Citation.]" (*People v. Babich* (1993) 14 Cal.App.4th 801, 806.)

Sufficient evidence supports the conviction for misdemeanor false imprisonment. Nichols testified that Gerardo came up behind her and put his arm around her, crossing her neck and grabbing her opposite shoulder. He had not removed his hand when she ran away. Berry testified that on the day of the incident, Nichols said that Gerardo grabbed her from behind and held her for what seemed like a long time. He also testified that as soon as she felt Gerardo's grip loosen, she bolted for the door and ran out to the police. This evidence was sufficient to permit the jury to convict Gerardo of misdemeanor false imprisonment.

Gerardo argues that the evidence was insufficient to permit a false imprisonment conviction because Nichols denied at trial that he had restrained her or compelled her to stay or go anywhere. In the next sentence, however, he acknowledges that Berry "testified that she had told him otherwise." He argues that no rational juror could have believed Berry over Nichols and that the evidence was insufficient to support the conviction because Nichols never testified that she was restrained.

It is the jury's role, not ours, to resolve conflicts in the evidence and to assess witnesses' credibility. "To warrant the rejection of the statements[] given by a witness

11

who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. (Citing cases.) Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." (*People v. Lyons* (1956) 47 Cal.2d 311, 319-320.) As long as "the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Jennings*, *supra*, 50 Cal.4th at pp. 638-639.)

## DISPOSITION

With respect to count 1, the finding that a person other than an accomplice was present at the time of the burglary is reversed and the judgment is modified to strike the finding that the burglary was a violent felony under section 667.5, subdivision (c)(21). In all other respects, the judgment is affirmed. The matter is remanded and the trial court is directed to recalculate Gerardo's custody credits to reflect the modification of the judgment, to prepare a corrected abstract of judgment, and to forward a certified copy of the abstract of judgment to the Department of Corrections and Rehabilitation.


ZELON, J.

We concur:



PERLUSS, P. J.                              FEUER, J.[*]

_____

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12