Filed 2/27/13  P. v. Smith CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B234315 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA068237) |
| v. | |
| BOBBIE SMITH, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Alex Ricciardulli, Judge.  Affirmed in part, reversed in part.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Seth P. McCutcheon, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# STATEMENT OF FACTS

Defendant Bobbie Smith appeals from a judgment entered after a jury convicted him of one count of false imprisonment by violence (Pen. Code, § 236),[1] one count of attempted forcible rape (§§ 664/261, subd. (a)(2)), and one count of indecent exposure with a prior conviction (§ 314, par. 1.).

Appellant contends that the convictions are not supported by substantial evidence and that the trial court erred in allowing evidence of prior convictions pursuant to Evidence Code sections 1108 and 1101, subdivision (b). We affirm the conviction for indecent exposure with prior conviction, and reverse the convictions for attempted forcible rape and false imprisonment by violence.

## I. Prosecution Evidence

On July 21, 2010, at about 8:00 a.m., 19-year-old A. M. arrived with her two-month-old baby at her mother-in-law's business, a traffic school, and parked her car outside a closed gate in front of the school. The office had not yet opened and A. was there to meet a client of the school. When A. first arrived at the school, she noticed appellant sweeping outside a business next door to the school. She recognized him as having swept outside the traffic school once in the past.

After the client left, A. walked to the gate, opened it so she could park inside, and was getting back into her car when appellant approached and asked if she needed help with the gate. As appellant talked, A. noticed he was looking "toward [her] breast" and "toward [her] vaginal area." A. told appellant that she did not need help and proceeded to drive through the open gate and parked her car in the driveway. As A. got out of her car, appellant approached her again and asked if she wanted him to wash her car. A. declined appellant's offer and entered the office with her baby.

---

[1] All subsequent statutory references are to the Penal Code.

2

A.'s uncle-in-law, Raymundo, arrived at the office and asked A. if she could stay a little longer because he needed to go take a shower. Before Raymundo left, appellant asked A. while she was outside the school "if he could sweep the business" and A. responded she didn't know and went inside to ask Raymundo. Raymundo said yes, telling A. to give appellant two dollars for the job. A. went back outside to where appellant was sweeping in front of the neighboring business and told appellant that he could sweep the front sidewalk of the school. A. went back inside the office and sat behind the desk while Raymundo left.

A few minutes after Raymundo left and while A. sat at the desk, appellant walked in through the front door and "asked for . . . the dustpan." Appellant pointed toward the bathroom when he asked for the dustpan. Knowing that the dustpan was kept in the bathroom, A. stood up to get it. A. did not remember if she told appellant that she would get the dustpan, testifying on direct examination that when she stood up she said she would get the dustpan, but on cross-examination testifying that she did not tell appellant she was going to get the dustpan. At that point, A. did not see appellant's penis exposed. A. went to the bathroom to get the dustpan which was kept next to the sink. The dustpan had an upright pole and could be picked up without bending over. A. picked up the dustpan and turned back to the door to find appellant standing in the doorway to the bathroom. A. had not realized that appellant had followed her to the bathroom and felt scared and nervous when she saw that appellant's "soft, semi-erect" penis was outside his pants, through the open zipper. A. moved the dustpan to the side towards appellant. With appellant standing in the doorway, A. could not exit the bathroom. Appellant told A., "it was a nice bathroom or something like that." Nervous and scared, A. felt trapped because appellant was "too close" and A. "was trying to think of a way out." Appellant stepped forward, causing A. to step back and bump into the bathroom sink. Seeing an opening, A. rushed out around appellant, and "went really quickly to the back of the desk to get [her] cell phone." Appellant was close enough to touch A. but he did not try to touch or restrain A. in the bathroom, did not tell her she could not leave, did not step in

front of A. as she left, did not look at or comment about his penis, and did not say anything sexual or flirtatious to A.

Appellant returned to the front of the office carrying the dustpan with his penis still exposed. Scared and too nervous to actually make a phone call, A. attempted to scare appellant by pretending to make a call. Appellant stood in front of A. and the desk and then walked towards the couch and A.'s baby and said to A., "what a pretty baby." At this point, appellant's penis was still exposed. Appellant did not say anything about his penis, did not say anything sexual or flirtatious and did not do anything to direct her attention to his penis. Appellant then walked to the front door and while opening the door put his penis back into his pants and zipped up his pants. Appellant exited and began sweeping. After appellant exited, A. immediately locked the front door and called her mother-in-law. Her mother-in-law told A. to call 911 and she did so.[2]

About 10 minutes after appellant exited and a few minutes after A. called 911, appellant began knocking on the locked front door. At that point, A. had forgotten that she owed appellant money for sweeping and that appellant still had the school's dustpan. A minute later, appellant began "pounding" on the window and said, "I know you are in there. I can still see your baby." A. did not respond. About a minute later, A. then heard "the back door being pounded on." From where she was hiding inside a doorless, walk-in closet in the office area, A. saw through the window that appellant went back to sweeping the front sidewalk of the school and was there when the police arrived and arrested him.

Approximately eight minutes after A. made the call to 911, the police arrived and arrested appellant. Los Angeles Police Detective Monica McPartland was assigned as the investigating officer to the case and interviewed A. later that morning. During the interview, A. "appeared to be in shock, somewhat upset and crying, very tearful." McPartland searched appellant's motel room, which was within walking distance of the traffic school, and found "soft" pornography and one adult magazine. McPartland

---

[2] A recording of the 911 call was played to the jury.

testified that appellant had been released from prison on December 9, 2009, after serving time for crimes that occurred in 1982.

## II. Prosecution's Evidence Code Section 1108 Evidence

D. T. testified that on March 19, 1982, at about 6:30 a.m., she was on her way to Crenshaw High School. T. was 14 years old at the time and was walking alone when appellant approached her. Appellant held a butcher knife to T.'s side and told her to get inside his car. T. got into the car and appellant climbed over her into the driver's seat and locked the doors. Appellant drove off and began masturbating while looking for a place to stop the car.

After parking in an alley, appellant told T. to pull her pants down and get into the back seat. T. struggled a little before complying. Appellant then got into the back seat with T. and raped her. After the rape, appellant drove T. to another location and told her to "get out the car." When T. got out, she memorized the license plate on appellant's car, wrote it down on her hand, and provided it to police.

T. testified against appellant as a rape victim in the 1982 trial and another, unnamed individual testified as a rape victim as well.

J. L. testified about an incident that occurred on March 19, 1982, after the incident involving T. had occurred. L. was 16 years old at the time and returning from lunch, on her way back to Crenshaw High School. L. was walking with another girl when appellant, sitting in a vehicle, signaled to L. and waved money that he then placed on the passenger seat. As L. looked at the money, appellant jumped out of the car, grabbed L., and attempted to remove her pants while trying to put her into the car. L. fought back and was able to grab onto a tree which broke appellant's grasp. After losing his grip, appellant jumped back into his car and fled.

L. testified against appellant in the 1982 trial.

5

Along with the testimony of T. and L., four certified convictions were admitted in evidence pursuant to Penal Code section 969b. The convictions included three counts of rape and one count of assault with intent to commit rape. This document was redacted to six pages in length and included the rape convictions from testifying victim, T., and an assault with intent to commit rape conviction from testifying victim, L., along with two other rape convictions involving another single, non-testifying victim.

### III. Defense Evidence

Appellant did not testify, and no witnesses were called on his behalf.

### IV. Conviction and Sentence

The jury convicted appellant of all three counts: false imprisonment by violence (§ 236), attempted forcible rape (§§ 664/261, subd. (a)(2)), and indecent exposure with a prior conviction (§ 314, par. 1.).

In bifurcated proceedings, the jury found to be true that appellant had a prior serious felony conviction within the meaning of section 667, subdivision (a), 11 prior "strikes" within the meaning of section 667, subdivisions (b) through (i) and 11 prior convictions within the meaning of section 667.5, subdivision (b).

Appellant was sentenced to 25 years to life for the attempted forcible rape charge plus five years pursuant to section 667, subdivision (b), for an aggregate term of 30 years to life. The trial court also sentenced appellant to 25 years to life for the false imprisonment charge and 25 years to life for the indecent exposure charge, which were both stayed pursuant to section 654.

### DISCUSSION

On appeal, appellant makes an insufficiency of the evidence argument as to each of his three convictions and that the trial court erred in admitting evidence of his prior convictions. We find no error in the trial court's admission of prior convictions under Evidence Code sections 1108 and 1101. Because we agree that insufficient evidence supports the convictions of attempted forcible rape and false imprisonment by violence (counts 1 and 3), we reverse on these two counts. However, sufficient evidence supports appellant's conviction of felonious indecent exposure (count 4).

6

## I. Evidence of Prior Criminal Acts

On appeal, appellant contends that the trial court erred in allowing T. and L. to testify and in allowing documentary evidence of three rapes and one assault with intent to commit rape, arguing that the other crimes evidence was inflammatory and its probative value was outweighed by its unduly prejudicial nature. We disagree.

### A. Evidence Code Section 1108

Evidence Code section 1108, subdivision (a), provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101[ prohibiting evidence of a defendant's character, or a trait of his character, to prove conduct on a specified occasion], if the evidence is not inadmissible pursuant to Section 352." As the Supreme Court has explained, Evidence Code section 1108 "allows evidence of the defendant's uncharged sex crimes to be introduced in a sex offense prosecution to demonstrate the defendant's disposition to commit such crimes." (*People v. Reliford* (2003) 29 Cal.4th 1007, 1009.) Under section 1108, trial courts may not "deem such evidence unduly prejudicial per se, but must instead engage in a careful weighing process under Evidence Code section 352." (*Id.* at pp. 1012–1013.)

In *People v. Falsetta* (1999) 21 Cal.4th 903, the Supreme Court stated that, in deciding whether to admit evidence of prior sexual offenses under Evidence Code section 1108, "trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*Id.* at p. 917.)

Evaluated in light of the factors listed in *Falsetta*, the trial court's ruling was not arbitrary, capricious, or patently absurd. The evidence was relevant to the attempted rape

and indecent exposure charges, because it tended to show appellant's disposition to commit sex offense crimes. (*Reliford*, *supra*, 29 Cal.4th at p. 1009.) Likewise, the 1982 evidence was not so remote from the charged offense given that appellant was incarcerated until seven months before the current offense. Also, because the trial court only admitted testimony that resulted in convictions, there is no issue as to the certainty of the commission of the prior offenses and no concern that the jury would be inclined to punish appellant for the 1982 offenses as he had served a lengthy prison sentence. The trial court used a less prejudicial alternative by excluding testimony from three other victims, and excluding testimony and documentary evidence on the kidnapping, robbery, child molestation and oral copulation convictions. The evidence was relevant to the attempted rape and indecent exposure charges, because it tended to show appellant's disposition to commit sex offense crimes. (*Reliford*, *supra*, 29 Cal.4th at p. 1009.)

Appellant argues that the evidence of the 1982 offenses was inflammatory as it was the story of "any woman's worst nightmare," being "violently raped", and "prior acts of the most extreme violence." T.'s actual testimony, however, was not inflammatory in its description. She stated that appellant had a "butcher knife and he had it to my side," stated that appellant "told me to pull my pants down" and "that's when he raped me," stated that "there was some struggle, yes, prior to me getting in back," responded affirmatively to questions asking if appellant "place[d] his penis into your vagina" and if it was done "against her will," and confirmed that she testified as a "rape victim." Appellant also argues that there is no similarity between the 1982 offenses and the current offense. There is, however, under section 1108 "no requirement that the charged and uncharged offenses be so similar that evidence of the prior acts would be admissible under section 1101" and it "'is enough the charged and uncharged offenses are sex offenses as defined in section 1108.' [Citation.]" (*People v. Hernandez* (2011) 200 Cal.App.4th 953, 966.)

Accordingly, we conclude that it was not arbitrary, capricious, or patently absurd for the court to admit the 1982 offenses under section 1108.

8

**B. Evidence Code Section 1101**

Under Evidence Code section 1101, evidence of other offenses or misconduct is inadmissible to prove criminal propensity, but may be admitted if relevant to prove a material fact such as intent. (Evid. Code, § 1101, subds. (a) & (b); *People v. Kelly* (2007) 42 Cal.4th 763, 783.) To be admissible, "such evidence 'must not contravene other policies limiting admission, such as those contained in Evidence Code section 352. [Citations.]' [Citation.]" Because evidence of uncharged offenses is highly prejudicial, it must have substantial probative value, and the trial court must carefully analyze the evidence under Evidence Code section 352 to determine if its probative value outweighs its inherent prejudicial effects. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404.)

Under Evidence Code section 352, the trial court "in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." The court's ruling on the admission or exclusion of evidence under Evidence Code section 352 "'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' (*People v. Jordan* (1986) 42 Cal.3d 308, 316.)" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124–1125.)

We review the trial court's admission of uncharged misconduct evidence under Evidence Code sections 1101 and 352 for abuse of discretion. (*People v. Kipp* (1998) 18 Cal.4th 349, 369.)

"'""We have long recognized "that if a person acts similarly in similar situations, he probably harbors the same intent in each instance" [citations], and that such prior conduct may be relevant circumstantial evidence of the actor's most recent intent. The inference to be drawn is not that the actor is *disposed* to commit such acts; instead, the inference to be drawn is that, in light of the first event, the actor, at the time of the second event, must have had the intent attributed to him by the prosecution.'" [Citations.]'" (*People v. T.* (2011) 52 Cal.4th 336, 355-356.) The least degree of similarity is required

9

where, as here, a prior offense is offered to prove intent. The prior offense and the charged offense need only be sufficiently similar to support an inference that the defendant "'"probably harbor[ed] the same intent in each instance." [Citations].'" (*Ewoldt*, *supra*, 7 Cal.4th at p. 402.)

We find no abuse of discretion in the admission of the 1982 offenses under Evidence Code section 1101. The evidence of the uncharged offense was sufficiently similar to support an inference that appellant harbored the same intent. (*Ewoldt*, *supra*, 7 Cal.4th at p. 402.)

## II. Insufficiency of the Evidence Claims

"The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]" (*People v. Jones* (1990) 51 Cal.3d 294, 314.) "When undertaking such review, our opinion that the evidence could reasonably be reconciled with a finding of innocence or a lesser degree of crime does not warrant a reversal of the judgment. [Citation.]" (*People v. Hill* (1998) 17 Cal.4th 800, 849.) "The federal standard of review is to the same effect: Under principles of federal due process, review for sufficiency of evidence entails not the determination whether the reviewing court itself believes the evidence at trial establishes guilt beyond a reasonable doubt, but, instead, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

## A. Attempted Forcible Rape

Appellant asserts that the evidence was insufficient to show that he took a direct but ineffectual step towards raping A. and that the evidence "does not support a finding that appellant intended to do anything more than what he did." We agree.

Forcible rape is defined as "an act of sexual intercourse accomplished with a person not the spouse of the perpetrator . . . [¶] . . . [¶] . . . [w]here it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (§ 261, subd. (a)(2).) In order for a jury to find a defendant guilty of attempted rape, the prosecution must prove that the defendant specifically intended to commit the crime of rape and took a direct, although ineffectual, act toward its commission. (§ 21a; *People v. Rundle* (2008) 43 Cal.4th 76, 138; *People v. Carpenter* (1997) 15 Cal.4th 312, 387.) A defendant's specific intent to commit rape may be inferred from the facts and circumstances shown by the evidence. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1130.) As for the requisite act, the evidence must establish that the defendant's activities went "beyond mere preparation" and that they show the defendant was "putting his or her plan into action." (*People v. Superior Court* (*Decker*) (2007) 41 Cal.4th 1, 8.)

Here, there is insufficient evidence to support the jury's determination that appellant intended to have sexual intercourse with A. against her will by means of force and that he engaged in a direct but ineffectual act aimed at raping A. The evidence showed that appellant looked toward A.'s breast and vaginal area when asking her if she needed help, followed A. to the bathroom for the dustpan and stood in the bathroom doorway with his penis exposed, took a step into the bathroom causing her to take a step back and, after A. left the bathroom, stood in the office with his penis still exposed before exiting and putting his penis back in his pants. While appellant's looking at A.'s breast and vaginal area while talking to her made her uncomfortable and was offensive, this behavior is as appellant points out "ubiquitous." It does not support the inference that appellant intended to do more or constitute a direct step toward having sexual intercourse with A. against her will. Likewise, following A. to the bathroom and standing with his

11

penis exposed would undoubtedly have made A. feel vulnerable and scared, but it does not constitute substantial evidence to support the jury's inference that appellant intended to do more or constitute a direct step to having sexual intercourse with A. against her will as the evidence also showed that even though appellant was close enough to touch A. while in the bathroom, he did not touch her or try to touch her, did not say anything sexual or flirtatious, did not look at or say anything about his penis, and did not do anything to prevent her from leaving the bathroom. "When, by reason of the defendant's conduct, the situation is 'without any equivocality,' and it appears the design will be carried out if not interrupted, the defendant's conduct satisfies the test for an overt act." (*People v. Decker*, *supra*, 41 Cal.4th at p. 13; see also *People v. Carpenter*, *supra*, 15 Cal.4th at p. 387 [to establish the act element of an attempted crime, the evidence must show "a direct movement after the preparation that would have accomplished the crime if not frustrated by extraneous circumstances"].) Here, the evidence showed there was no touching, no comments of a sexual nature and no use of force by appellant.

Accordingly, we conclude that the jury's conviction of appellant for attempted rape is not supported by substantial evidence.

### B. False Imprisonment By Violence

Appellant argues that the evidence was insufficient to support his conviction for false imprisonment by violence as "there was no restraint of any kind, much less by use or violence or menace." We agree.

False imprisonment is "the unlawful violation of the personal liberty of another." (§ 236.) "[T]he essential element of false imprisonment is restraint of the person. Any exercise of express or implied force which compels another person to remain where he does not wish to remain, or to go where he does not wish to go, is false imprisonment." (*People v. Bamba* (1997) 58 Cal.App.4th 1113, 1123.) False imprisonment is punishable as a misdemeanor, but if the false imprisonment is "effected by violence, menace, fraud, or deceit," it is punishable as a felony. (§ 237, subd. (a).)

Force is an element of both misdemeanor and felony false imprisonment. "Misdemeanor false imprisonment becomes a felony only where the force used is greater

12

than that reasonably necessary to effect the restraint.  In such circumstances the force is defined as 'violence' with the false imprisonment effected by such violence a felony." (*People v. Hendrix* (1992) 8 Cal.App.4th 1458, 1462.)  As relevant here, felony false imprisonment requires proof of either violence or menace.  Violence requires the actual use of physical force against the victim that is greater than reasonably necessary to effect the restraint.  (*People v. Matian* (1995) 35 Cal.App.4th 480, 485.)  Menace means """"a threat of harm express or implied by word or act"""" and generally falls into two categories: (1) use of a deadly weapon, or (2) verbally threatening harm.  (*Id.* at pp. 484, 485–486.)

Here, the evidence showed no restraint and no use of any physical force against A., let alone physical force greater than reasonably necessary to effect restraint. Similarly, the evidence showed no verbal threats of harm or use of a deadly weapon. While appellant's presence in the doorway of the bathroom and exposed penis were no doubt intimidating to A., when she attempted to leave the bathroom she was able to do so unhindered by appellant.

Accordingly, we reverse the conviction for false imprisonment by violence or menace as unsupported by substantial evidence.

**C.  Indecent Exposure with Prior Conviction**

Appellant next contends that his conviction for indecent exposure is not supported by sufficient evidence, arguing that he did nothing to direct attention to his penis and "as anyone who wears pants knows," a zipper can be down inadvertently.

Viewing the evidence in the light most favorable to the People and presuming the existence of every fact the jury could reasonably deduce from the evidence, we disagree and affirm.

Section 314 reads in part: "Every person who willfully and lewdly, either: 1. Exposes his person, or the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby . . . is guilty of a misdemeanor. . . .  [U]pon a first conviction under subdivision 1 of this section after a previous conviction under Section 288, every person so convicted is guilty of a felony

13

. . . ." Indecent exposure is a specific intent crime—in order to be guilty, appellant must have exposed himself with the specific intent to direct public attention to his genitals for the purpose of sexually arousing or gratifying himself or another person, or for the purpose of sexually offending another person. (*In re Smith* (1972) 7 Cal.3d 362, 366.)

Here, there is no evidence that either appellant's pants were unzipped or that his penis was exposed prior to his entering the bathroom. Since appellant put his penis back in his pants when he left the office, he clearly was aware at some point that his penis was exposed. Viewing the evidence in the light most favorable to the prosecution and making all presumptions of fact the jury could reasonably deduce from the evidence in support of the judgment, the jury could reasonably conclude that appellant was aware that, not only was his pants zipper down, but that his penis was outside his pants while he stood in front of A. in the bathroom and while he walked back to the office and stood in front of her. Moreover, the jury could reasonably conclude that the exposure was purposeful and based on appellant's prior convictions done for a lewd purpose. Accordingly, we affirm appellant's conviction for indecent exposure with prior conviction.[3]

## DISPOSITION

Appellant's convictions on count 1 of false imprisonment by violence and on count 3 of attempted forcible rape are reversed. Appellant's conviction on count 4 for indecent exposure with a prior conviction is affirmed. The matter is remanded to the trial court for resentencing.

NOT TO BE PUBLISHED.

CHANEY, J.

We concur:

---

[3] Because we reverse appellant's conviction on two counts, leaving only one count, we need not address the prosecution's argument that the trial court erred in failing to impose certain fines as to the stayed convictions.

14

MALLANO, P. J.


JOHNSON, J.