Filed 5/27/26  (unmodified opn. attached)

CERTIFIED FOR PARTIAL PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRAD ZACK BERCH,<br><br>    Defendant and Appellant. | 2d Crim. No. B339641<br>(Super. Ct. No. 22CR05483)<br>(Santa Barbara County)<br><br>ORDER MODIFYING<br>OPINION AND DENYING<br>REHEARING<br>[NO CHANGE IN<br>JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on May 4, 2026, be modified as follows:

1.  On page 3, the first full paragraph beginning "Berch drove past" is deleted, and the following is inserted in its place:

Berch drove past the first exit to Los Alamos.  J. told him, "You've missed my exit.  You just drove by my exit.  Please take me home."  But Berch continued driving on U.S. 101 and missed the second exit to Los Alamos.

2.  On page 11, the last paragraph beginning "First, the audio recording" is deleted, and the following is inserted in its

place:

      First, the audio recording on J.'s phone undisputably establishes that while driving from the area of the winery, J. asked to be taken home. Berch instead kept her in the car while he bypassed exits and streets toward her house.

3. On page 15, after "No further jury instruction was required," the following paragraph is added:

      Moreover, any error in failing to instruct regarding proximate cause was harmless. (*People v. Hendrix* (2022) 13 Cal.5th 933, 942; *Chapman v. California* (1967) 386 U.S. 18, 24.) "More than one person may be found to have directly participated in inflicting a single injury." (*People v. Guzman* (2000) 77 Cal.App.4th 761, 764.) In *Guzman*, the defendant's intoxication and unsafe turn into oncoming traffic supported a great bodily injury enhancement regarding his passenger, even if the car that hit his actually caused the injuries. Here, overwhelming evidence established that Berch's erratic driving was a direct cause of J.'s injuries.

There is no change in judgment.
Appellant's petition for rehearing is denied.

---

YEGAN, Acting P. J.      BALTODANO, J.      CODY, J.

Filed 5/4/26 (unmodified opinion)

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRAD ZACK BERCH,<br><br>    Defendant and Appellant. | 2d Crim. No. B339641<br>(Super. Ct. No. 22CR05483)<br>(Santa Barbara County) |

    In the published portion of this opinion, we hold that felony false imprisonment based on menace does not require a threat to inflict force that is greater than necessary to effectuate restraint on a person's liberty. Because felony false imprisonment based on menace involves the threat to inflict injury upon another person, it is not necessary to consider whether the force used would be greater than that necessary to effectuate the restraint.

    Brad Zack Berch appeals from the judgment after a jury convicted him of false imprisonment by violence or menace (Pen. Code,[1] §§ 236, 237, subd. (a)), and found true an enhancement for

---

    * Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for partial publication. The

personal infliction of great bodily injury involving domestic violence (§ 12022.7, subd. (e)).  The trial court placed Berch on supervised probation with terms including 210 days in county jail.

Berch contends substantial evidence did not support felony false imprisonment by violence or menace, the jury instruction regarding menace was erroneous, counsel rendered ineffective assistance by failing to request a mistake of fact instruction, and the great bodily injury jury instruction was erroneous.  We affirm.

FACTUAL AND PROCEDURAL HISTORY

Berch and J.[2] were married but separated.  Berch had injured J. in prior incidents of domestic violence that included him forcing her into various rooms, pushing her, preventing her from getting up, and slamming her head into the ground.

In June 2022, J. agreed to go for a drive with Berch in his pickup truck.  They left her home in Los Alamos and took U.S. 101 to Alisos Canyon Road toward Rancho Sisquoc Winery.  Berch parked on the side of the road and the couple began arguing.  He then started driving down Alisos Canyon to U.S. 101 back toward Los Alamos.

J. told Berch, "Just bring me home."  Because Berch was in "a rage," J. recorded their argument on her phone.  J. was scared

---

portions of this opinion to be deleted from publication are Parts B.2 and B.3 of the Discussion.

[1] Undesignated statutory references are to the Penal Code.

[2] We refer to the victim by her initial to protect her privacy. (Cal. Rules of Court, rule 8.90(b)(4).)

because Berch was driving "erratically" at "[h]igh speeds, not straight in a line, not in his lane."

Berch drove past the first exit to Los Alamos. J. told him, "You've missed my exit. You just drove by my exit. Please take me home." She also asked to be let out so she could walk home. But Berch continued driving on U.S. 101 and did not let her out. He also missed the second exit to Los Alamos. J. asked again to be let out of the truck and said she would walk home.

J. asked Berch where he was going. He replied, "I'm not actually going anywhere." She told him he was "all over the road," and "I don't feel safe in the car with you right now." Berch eventually exited the freeway and turned the truck around. He said he was "trying to get on the . . . freeway." He said he was going to take J. home.

Berch then drove toward Los Alamos. He drove past the first street that was the most direct route to J.'s house. J. told him, "You just passed my turn," and "I live down this way." Berch then drove past the second street that led to her house. She said, "You just passed my turn again. Where are you going?" J. was terrified because Berch was driving toward a very dark, isolated road. Berch then made a U-turn and stopped in front of an elementary school about four houses from her home.

J. unclipped her seatbelt and opened the car door. The door was unlatched but not fully open. She said, "I'm gonna walk from here." Berch replied, "No you're not." J. said, "Please let me out." He said, "I'll let you out when I get you to the house." She repeated, "Let me out of the car." He said, "Fuck you. . . . Leave the door open . . . let the neighbors hear." She said, "Brad, you're not safe. I'm getting out. I'm getting out of the car." He replied, "Yeah. Try it, dumb cunt. Try it, you dumb bitch!" Berch made

3

"a malicious . . . bone-chilling laugh."

Berch then accelerated the truck and made a sharp left turn.  J.'s door opened and she "flew out" out of the truck and onto the pavement.  Metal tools also "flew" out of the truck and landed on the ground.  Berch got out and yelled at J. to get back in the truck.  J. was injured and unable to get up.

J. testified the speed and the force of the turn caused the door to open and her to fly out of the truck.  She had similarly said before trial that she "flew" out or was thrown out of the truck.  But J. also made inconsistent statements that she stepped out of the truck.  She told police she got out of the truck on her own because she thought the truck was moving slowly enough for her to exit safely but Berch then sped up.

J. was taken to the hospital and treated for pain.  She had a compression fracture of the vertebra, abrasions, bruises, and a hematoma.  She stayed in the hospital for five days and was in pain for weeks.

## DISCUSSION

### A. *Felony false imprisonment based on violence or menace*

Berch contends there was insufficient evidence of violence or menace for felony false imprisonment.  We disagree.

We review a sufficiency of the evidence challenge for substantial evidence.  Thus, we " ' "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  [Citation.]'  [Citations.]  'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.' "  (*People v. Clark* (2011) 52 Cal.4th 856,

4

942–943.) " ' " '[T]he judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding.' " ' " (*Id.* at p. 945.) Nor do we "reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses." (*People v. Pre* (2004) 117 Cal.App.4th 413, 421.)

"False imprisonment is the unlawful violation of the personal liberty of another." (§ 236.) " ' "Any exercise of force, or express or implied threat of force, by which in fact the other person is deprived of [their] liberty or is compelled to remain where [they do] not wish to remain, or to go where [they do] not wish to go, is false imprisonment." ' " (*People v. Zilbauer* (1955) 44 Cal.2d 43, 51.) False imprisonment is a misdemeanor but is elevated to a felony if "effected by violence, menace, fraud, or deceit." (§ 237, subd. (a), see § 17, subd. (a).) The jury instructions here described menace and violence as the theories of felony false imprisonment.

### 1. Menace

"Menace means a verbal or physical threat of harm. The threat of harm may be express or implied." (*People v. Aispuro* (2007) 157 Cal.App.4th 1509, 1511 (*Aispuro*).) "When a rational fact finder could conclude that a defendant's acts or words expressly or impliedly threatened harm, the fact finder may find that there is menace sufficient to make false imprisonment a felony." (*People v. Wardell* (2008) 162 Cal.App.4th 1484, 1491.)

We conclude substantial evidence supports felony false imprisonment by menace. Berch was speeding and driving "all over the road," which frightened J. In assessing menace, the jury could reasonably consider J.'s fear of Berch's erratic driving. (*People v. Islas* (2012) 210 Cal.App.4th 116, 127.) After Berch

stopped at the school, J. announced that she was getting out and stated, "Brad, you're not safe." Berch cursed at her and said, "Yeah. Try it," followed by a malicious laugh. The jury could reasonably interpret this as an implied threat that J. would be harmed if she attempted to leave. Thus, Berch's conduct here is like the defendant's in *Aispuro*, where a conviction for false imprisonment based on menace was upheld based on the defendant ordering the young victims to sit in the street and telling them, " 'If you don't, then I will do something.' " (*Aispuro*, *supra*, 157 Cal.App.4th at p. 1513.)

The conclusion that Berch threatened harm to J. is supported by evidence of his prior acts of domestic violence in which he attacked and injured her. The jury was properly instructed it could consider this evidence as a factor to determine if he committed felony false imprisonment. (CALCRIM No. 852A; Evid. Code, § 1109, subd. (a)(1).) The jury could also properly consider J.'s fear to establish that she interpreted his words and conduct as threats of harm. (*People v. Islas*, *supra*, 210 Cal.App.4th at p. 127.) And, as we explain below in section B.1, we reject Berch's contention that felony false imprisonment based on menace requires a threat to use force greater than reasonably necessary to effect the restraint.

### 2. *Violence*

Substantial evidence also supports felony false imprisonment through violence. While the prosecutor's argument discussed only menace, the jury was not limited to that theory and could also consider felony false imprisonment by violence, as stated in the instruction the jury received (CALCRIM No. 1240, modified). (*People v. Perez* (1992) 2 Cal.4th 1117, 1126.)

"Violence . . . means the exercise of physical force used to

6

restrain over and above the force reasonably necessary to effect such restraint." (*People v. Babich* (1993) 14 Cal.App.4th 801, 806 (*Babich*), italics omitted.) " ' "[V]iolence" . . . include[s] any application of force even though it entails no pain or bodily harm and leaves no mark.' " (*People v. Cruz-Partida* (2022) 79 Cal.App.5th 197, 207, fn. 9 [assault].) And here, Berch's act of driving erratically, beyond that necessary to restrain J. by operating a moving vehicle, constitutes violence.

In *People v. Bamba* (1997) 58 Cal.App.4th 1113, 1124 (*Bamba*), the court concluded that false imprisonment by violence was established by driving erratically. The victim there climbed on top of the defendant's van to avoid being run over, and the defendant restrained her by driving with her on top. The court stated, "It is likely appellant could have caused [the victim] to remain on the vehicle if he had obeyed the speed limit and driven safely. However, there was evidence that appellant drove as fast as 80 miles per hour on the freeway and purposefully swerved his vehicle, thus increasing the danger to [the victim]. Thus, the 'force' appellant used to keep [the victim] on top of the van was greater than that reasonably necessary to effect her restraint, and increased the danger to her." (*Ibid.*) As in *Bamba*, Berch's erratic driving, including speeding and not staying in his lane, increased the danger to J. beyond that required to effectuate her restraint through a moving vehicle.

Berch also contends there was insufficient evidence of intent to restrain because he did not intend his unsafe driving to be a means of restraining J. (§ 20; *People v. Sipult* (1965) 234 Cal.App.2d 862, 867 [act causing confinement requires intent to cause it].) We are not persuaded. The jury was instructed that felony false imprisonment required that Berch "intentionally"

7

restrain the victim by violence or menace. (CALCRIM No. 1240, modified.) The jury was not required to accept Berch's contention that his erratic driving was only "incidental to the restraint" because he was angry or distracted. Considering Berch's erratic driving together with his deviations from the route to J.'s home and history of domestic violence, the jury could reasonably conclude he intended his dangerous driving and his challenge to "[t]ry" to exit the vehicle as means to restrain her through menace or violence.

## B. Jury instructions

"A trial court must instruct the jury, even without a request, on all general principles of law that are ' "closely and openly connected to the facts and that are necessary for the jury's understanding of the case." ' " (*People v. Burney* (2009) 47 Cal.4th 203, 246.) "Even if the court has no sua sponte duty to instruct on a particular legal point, when it does choose to instruct, it must do so correctly." (*People v. Castillo* (1997) 16 Cal.4th 1009, 1015.) We review claims of instructional error de novo. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 919.)

### 1. Menace

Berch contends the jury instruction defining "menace" was erroneous because it did not include a requirement that the force threatened must be greater than that reasonably necessary to effect the restraint. We again disagree.

The jury was instructed that the People must prove that:

"1. The defendant intentionally and unlawfully restrained, confined, or detained someone or caused that person to be restrained, confined, or detained by violence or menace;

"AND

"2. The defendant made the other person stay or go

8

somewhere against that person's will.

"*Violence* means using physical force that is greater than the force reasonably necessary to restrain someone.

"*Menace* means a verbal or physical threat of harm.  The threat of harm may be express or implied."  (CALCRIM No. 1240, modified.)

This instruction correctly states the law.  (*Aispuro*, *supra*, 157 Cal.App.4th at pp. 1511–1512; *Bamba*, *supra*, 58 Cal.App.4th at p. 1123.)

Berch forfeited his instructional error claim because he did not object in the trial court or request an additional instruction. " 'A party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.' "  (*People v. Hart* (1999) 20 Cal.4th 546, 622.)  But in the absence of an objection, we may review a jury instruction "if the substantial rights of the defendant were affected thereby."  (§ 1259.)

Here, we conclude Berch's substantial rights were not affected because whether a threat constitutes menace does not depend on the amount of force otherwise necessary to effectuate the restraint.  The Legislature has determined that certain types of false imprisonment—those "effected by violence, menace, fraud, or deceit"—are more severe and warrant felony punishment.  (§ 237, subd. (a).)  To constitute false imprisonment by menace, the factfinder need not determine whether the menace threatened more force than would have been reasonably necessary to effectuate the restraint.  If a false imprisonment is accomplished by menace, it is unnecessary to compare it with some other means the defendant could have used to effectuate

9

the restraint.

*Babich, supra,* 14 Cal.App.4th 801, upon which Berch relies, is not to the contrary. For purposes of felony false imprisonment, *Babich* held that "[v]iolence . . . means the exercise of physical force used to restrain over and above the force reasonably necessary to effect such restraint." (*Id.* at p. 806, italics omitted.) *Babich* reasoned that "a contrary statutory interpretation, rendering 'violence' synonymous with 'force,' would allow the felony offense to largely swallow up the misdemeanor." (*Ibid.*) In other words, effectuating a person's restraint through force should not be a felony when the exercise of such force would only constitute a misdemeanor. As *Babich* observed, "violence always includes force, but force may or may not include violence." (*Id.* at p. 807, fn. 2.)

But the same logic does not apply to menace. False imprisonment may be effected by " ' "[a]ny exercise of *force*, or express or implied threat of *force*." ' " (*People v. Zilbauer, supra,* 44 Cal.2d at p. 51, italics added.) A misdemeanor false imprisonment can be effected through force or a threat of force that does not involve a threat of *injury*, e.g., by holding an individual's arms, threatening to lock them into a room, etc.

In contrast, "menace" is a threat that " 'shows an intention to *inflict an injury* upon another.' " (*People v. Elam* (2001) 91 Cal.App.4th 298, 307, italics added ["menace" definition in rape statute not significantly different from common dictionary definition].) The jury here was properly instructed that "*[m]enace"* is "a verbal or physical threat of *harm*." (CALCRIM No. 1240, modified, second italics added; *Aispuro, supra,* 157 Cal.App.4th at p. 1512.) No error in the jury instruction has been shown.

10

## 2. *Mistake of fact*

Berch contends counsel rendered ineffective assistance by failing to request a jury instruction regarding mistake of fact. We are not persuaded.

Mistake of fact may negate the intent required to commit a crime. (CALCRIM No. 3406.) Because false imprisonment is a general intent crime (*People v. Fernandez* (1994) 26 Cal.App.4th 710, 716), the mistaken belief must be reasonable. (*People v. Lawson* (2013) 215 Cal.App.4th 108, 115.) "[T]he defendant's mistaken belief must relate to a set of circumstances which, if existent or true, would make the act charged an innocent act." (*Ibid.*)

"The trial court does not have a sua sponte duty to give a mistake of fact instruction. [Citations.] The court is, however, required to give such an instruction on request, where a defendant presents substantial evidence on mistake of fact and the instruction is legally correct." (*People v. Speck* (2022) 74 Cal.App.5th 784, 791.)

Berch contends he could have been mistaken about three facts: whether J. was asking to be let out of the car or just wanted to be taken home, whether he was on a freeway or a highway, and whether the door was closed when he accelerated away from the school. As discussed below, none of these matters required a mistake of fact instruction.

First, the audio recording on J.'s phone undisputably establishes that while driving from the area of the winery, J. asked to be let out of the car and also asked to be taken home. But even if, as Berch contends, he believed J. only wanted to be taken home, he instead kept her in the car while he bypassed exits and streets toward her house.

11

When Berch stopped at the school, J. told Berch multiple times to let her out of the car. There is no evidence he did not hear or misunderstood her. Instead, Berch responded with obscenities and told J. to "[l]eave the door open." When she repeated she was getting out, Berch again acknowledged her statement by daring her to "[t]ry it." No evidence supports his claim that he was mistaken about J.'s statements, or that such a mistake would be reasonable.

The second purported mistake, whether Berch believed he was on the freeway or merely a highway, is based on the testimony of a California Highway Patrol officer. The officer testified that pedestrians are prohibited on freeways and it is unlawful to stop a vehicle on a freeway except in an emergency. Such restrictions do not apply to highways that are not freeways.

Part of U.S. 101 on which Berch drove in the Los Alamos area is not a freeway, but no signs designate that fact. It is unclear whether the portion of U.S. 101 when Berch said he was "trying to get on the . . . freeway" was a freeway or highway. There was no evidence that Berch mistakenly believed he was on a freeway as opposed to a highway, nor evidence that offramps were not available on the freeway where he could lawfully let J. out of the car. Moreover, the designation of a freeway versus a highway was not significant to the defense—counsel argued to the jury that whether it was a freeway or a highway, it would have been unsafe to let J. out of the car at night with no pedestrian path, no lights, no cell phone reception, and cars speeding by. Defense counsel's argument was supported by the necessity instruction given by the court at counsel's request (CALCRIM No. 3403).

The third purported mistake, that Berch believed the door

12

was closed, would not negate an element of the crime if true. (*People v. Speck*, *supra*, 74 Cal.App.5th at p. 791.)  J. testified the door was "unlatched, but not fully opened."  She did not recall that there was "air between the door and the truck," but it was "obviously open."  If Berch believed the door was locked, his acceleration and sharp turn demonstrated his intent to restrain J. in the car over her objections.

To establish ineffective assistance of counsel, "the defendant must show that counsel's performance was deficient," and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 694.)  "Competent counsel is not required to make all conceivable motions" but "should realistically examine the case, the evidence, and the issues, and pursue those avenues of defense that, to their best and reasonable professional judgment, seem appropriate under the circumstances."  (*People v. Freeman* (1994) 8 Cal.4th 450, 509.)

Here, ineffective assistance of counsel has not been shown because there were reasonable tactical reasons why counsel would not request a mistake of fact instruction.  (*People v. Mai* (2013) 57 Cal.4th 986, 1009; see *Strickland,* at p. 689.)  Because the instruction requires that the defendant *reasonably* believed the mistaken facts, counsel could have been concerned that the jury might believe this shifted the burden to Berch to prove his innocence by showing his beliefs were reasonable.  This concern is demonstrated by counsel's expression of a similar concern that the necessity instruction (CALCRIM No. 3403) "would shift the burden onto the defense" before counsel ultimately agreed to the instruction.  Berch has not shown ineffective assistance of

13

counsel.

### 3. *Great bodily injury*

The jury found true the allegation that Berch "personally inflict[ed] great bodily injury under circumstances involving domestic violence in the commission of a felony." (§ 12022.7, subd. (e).) Berch contends the trial court erred by not instructing the jury sua sponte regarding causation for the great bodily injury enhancement. We conclude otherwise.

The court instructed the jury that the People had the burden to prove beyond a reasonable doubt "that the defendant personally inflicted great bodily injury" on J. (CALCRIM No. 3163.) Berch did not request CALCRIM No. 240, which defines proximate cause of an injury as "the direct, natural, and probable consequence of the act [or omission]. . . . A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes." (Italics omitted.) The court is required to instruct sua sponte regarding proximate causation when that is at issue. (*People v. Bell* (2020) 48 Cal.App.5th 1, 17.)

Here, proximate cause was not an issue. "[T]he Legislature did not employ the proximate cause concept when it articulated the requirements for enhancement under section 12022.7, but instead used the language 'personally inflicts great bodily injury.' . . . We decline to impute the proximate cause concept into the statute when the Legislature left it out." (*People v. Rodriguez* (1999) 69 Cal.App.4th 341, 350; see *People v. Bland* (2002) 28 Cal.4th 313, 337.)

 "The meaning of the statutory requirement that a defendant personally inflict the victim's injury does not differ from its nonlegal meaning. [Citation.] '[T]he phrase "personally

14

inflicts" means that someone "in person" . . ., that is, directly and not through an intermediary, "cause[s] something (damaging or painful) to be endured." ' " (*People v. Ollo* (2021) 11 Cal.5th 682, 688.)  Here, Berch "personally inflicted great bodily injury on [J.] during the commission of" false imprisonment when he accelerated and turned sharply, ejecting J. from a moving vehicle. (CALCRIM No. 3163.)  No further jury instruction was required.

DISPOSITION

The judgment is affirmed.

<u>CERTIFIED FOR PARTIAL PUBLICATION.</u>

BALTODANO, J.

We concur:

YEGAN, Acting P. J.

CODY, J.

15

Stephen K. Dunkle, Judge

Superior Court County of Santa Barbara

_____

Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Jonathan James Kline and Melanie Dorian, Deputy Attorneys General, for Plaintiff and Respondent.